IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
SEVERALLY SUBCRIBING TO POLICY No. 150613000,
SYNDICATE 1458 RNR - RENAISSANCERE SYNDICATE,
HAMILTON MANAGING AGENCY LIMITED FOR AND ON
BEHALF OF ALL UNDERWRITING MEMBERS OF
ACAPPELLA SYNDICATE 2014 FOR THE 2018 YEAR OF
ACCOUNT, SYNDICATE 1955 BAR - BARBICAN
INSURANCE, SYNDICATE 2001 AML - MS AMLIN,
SYNDICATE 5678 VSM - VIBE SYNDICATES                           PLAINTIFFS

V.                              NO. _____

CARLA CHASTAIN; STEVE CHASTAIN;
CHASTAIN FINANCIAL SERVICES, LLC;
DIANE ADAMS MANN; KENDRA KILKER;
CHARLES FAIR; THE ADAMS TRUST
UAD SEPTEMBER 8, 2004; and EDWARD J.
BYRNES, IDIVIDUALLY AND AS TRUSTEE
OF THE P. DIANE ADAMS MANN
MASSACHUSETTS TRUST UAD
AUGUST 26, 2008                                               DEFENDANTS

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiffs, Those Certain Underwriters at Lloyd's, London Severally Subscribing to Policy No. 150613000, Syndicate 1458 RNR – Renaissance Re Syndicate, Hamilton Managing Agency Limited for and on Behalf of all Underwriting Members of Acappella Syndicate 2014 for the 2018 Year of Account, Syndicate 1955 BAR - Barbican Insurance, Syndicate 2001 AML - MS Amlin, Syndicate 5678 VSM - Vibe Syndicates (hereinafter "Underwriters"), each having severally subscribed, each in its own

proportionate share and not one for the other to Policy No. 150613000 ("The Policy") by and through their attorneys, Barber Law Firm PLLC, and for its Complaint for Declaratory Judgment, states:

1. This is a Complaint for Declaratory Judgment brought pursuant to Ark. Code Ann. § 16-111-101, in which Underwriters seeks a declaration from this Court of its contractual obligations regarding an insurance contract between it and Defendant Carla Chastain.

2. This action will resolve a dispute as to whether Underwriters must provide a defense or indemnity to Carla Chastain, Steve Chastain, and/or Chastain Financial Services, LLC in a lawsuit styled *Diane Adams Mann; The Adams Trust dated September 8, 2004; Kendra Kilker and Charles Fair v. Carla Chastain; Steve Chastain; Chastain Financial Services, LLC; Edward J. Burns; and John Does 1-100,* which is pending in the Circuit Court of Benton County, Arkansas. *See* Exhibit A.

### PARTIES, JURISDICTION, AND VENUE

3. Underwriters is an insurance company located in the United Kingdom and is authorized to do business in Arkansas.

4. Separate Defendants Carla and Steve Chastain are husband and wife and residents of Benton County, Arkansas.

5. Separate Defendant Chastain Financial Services, LLC is a limited liability company organized under the laws of the state of Arkansas, and its principal place of business is located in Benton County, Arkansas.

6. Separate Defendants Diane Mann, Kendra Kilker, and Charles Fair are all residents of Benton County, Arkansas.

7. Separate Defendant The Adams Trust dated September 8, 2004 is a trust created pursuant to Arkansas law. Separate Defendant Diane Adams Mann is the grantor and trustee, Separate Defendants Kendra Kilker and Charles Fair are the beneficiaries, and the corpus of the trust is located in Benton County, Arkansas.

8. Separate Defendant Edward J. Byrnes is an individual who, upon information and belief, either resides in Maryland or California. However, he is the acting trustee of the P. Diane Adams Mann Massachusetts Trust dated August 26, 2008, is a named defendant in the underlying lawsuit, and has entered an appearance therein. As such, he has established minimum contacts with the state of Arkansas so as to satisfy the requirements of personal jurisdiction.

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds the $75,000 jurisdictional limit for diversity jurisdiction.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### THE UNDERLYING LAWSUIT

11. In the underlying lawsuit, Plaintiffs claim that the Chastain defendants convinced Ms. Mann to purchase a universal life insurance policy

with a high death benefit and that she should use a premium financing agreement to pay for the policy. *See* Exhibit A at paragraphs 23 and 27-28. The underlying Complaint does not state when this advice was given, when the policy was purchased, or when the premium financing agreement was entered into. However, paragraph 11 of the Complaint states that Ms. Mann made contact with Ms. Chastain in the "early 2000s" for "the purpose of obtaining advice regarding financial planning." *Id.* Finally, a copy of the life insurance policy in question, which is attached hereto as Exhibit B, shows it was purchased in 2008.

    12.    The Complaint also references a Master Consolidated Promissory Note dated November 25, 2016, and states that the Note "makes apparent that the premium financing arrangement began some time ago." *See* Exhibit A at paragraphs 40 and 42. Plaintiffs also allege Ms. Chastain incorrectly advised Ms. Mann to not make interest payments on the premium financing agreement. *See* Exhibit A at paragraphs 32 and 36. Generally, the Complaint alleges that the life insurance policy should never have been purchased in the first place and that the "investment" was made worse by the financing agreement as well as the fact that Ms. Mann was not making interest payments based upon the advice of Ms. Chastain. As a result, it alleges Ms. Mann is in default on the current promissory note/loan dated December 2, 2017.

    13.    Based upon the aforementioned allegations, the plaintiffs in the underlying lawsuit contend that Separate Defendants Carla Chastain, Steve

Chastain, and/or Chastain Financial Services, LLC are liable under theories of negligence, breach of fiduciary duty, violation of the Arkansas Deceptive Trade Practices Act, and fraud.

## THE POLICY

13. Underwriters issued Policy No. 150613000 to Carla Chastain for the policy period of December 1, 2018 – December 1, 2019. A certified copy of the policy and declarations are attached hereto as Exhibit C. The declarations page states that the policy had a retroactive date of December 1, 2017, and that there are no additional insureds listed on the policy. *Id.*

14. On page 1 of 22, the policy states as follows:

**I. INSURING AGREEMENTS**

**A. Professional Liability**

The Company will pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as **Damages** because of a **Claim** arising out of a **Wrongful Act** of the Insured or a **Wrongful Act** of another for whom the Insured is legally responsible, and to which this insurance applies. Any Claim arising out of a **Wrongful Act** must first be made against the Insured and reported to the **Company** during the **Coverage Period** or **Extended Reporting Period**, if applicable. The **Wrongful Act**(s) must have been committed on or after the **Retroactive Date** shown in Item 7. of the Declarations of Coverage and before the end of the **Coverage Period**.

The Company shall not be obligated to pay any **Damages** or to defend any **Claim** after the applicable **Limit of Liability** described in Section IV. LIMITS OF LIABILITY AND DEDUCTIBLE has been exhausted by the payment of **Damages and Claims Expenses**.

*Id.*

15. Next, and beginning on page 4 of 22, the policy defines the following pertinent terms:

## II. DEFINITIONS

Wherever used in this policy:

**C. Claim(s)** means a written demand for money, including any civil proceeding, brought against the **Insured** arising out of a **Wrongful Act** to which this insurance applies. **Claim(s)** shall not include any **Disciplinary Proceedings** or other regulatory inquiries.

[***]

**F. Covered Products** means **Insurance Products.**

[***]

**J. Insured(s) means:**

**1.** The **Named Insured** listed in Item **1.** of the Declarations of Coverage.

**2.** Any past, present or future principal, partner, officer, director, stockholder, trustee or employee of the **Named Insured** or its **Predecessor Firm(s)** but only with respect to **Professional Services** performed on behalf of the **Named Insured** or its **Predecessor Firm(s);**

**K. Insurance Products** mean:

**1.** Individual and/or group life insurance and accident and health insurance;

**2.** Individual and/or group disability income insurance;

**3.** Long-term care insurance; or

**4.** Medicare Supplemental Insurance or Medicare Advantage Plans.

[***]

**Q. Professional Services** means the following services performed in connection with a **Covered Product** by an **Insured** in the conduct of the **Named Insured's** business:

**1.** Soliciting, negotiating, placing, recommending, selling and/or servicing of a **Covered Product.**

**2.** Providing advice, consultation, administration and financial planning services solely related to a **Covered Product.**

**3.** Providing services as a Notary Public.

**4.** Providing expert witness testimony related to **Professional Services** or a **Covered Product.**

[***]

**U. Wrongful Act(s)** means:

**1.** Any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty; or

**2.** Any actual or alleged negligent **Personal Injury**

Arising out of the performance of or failure to perform **Professional Services** by the **Insured** or by any other person or entity for whom the **Insured** is legally liable.

*Id.* at page 4.

16. Finally, the policy contains the following relevant exclusions beginning on page 7 of 22:

### V. EXCLUSIONS

This Coverage Part does not apply to any **Claim** based on or arising out of:

### B. Intentional and Criminal Acts

Dishonest, criminal, fraudulent, malicious or intentional acts, errors or omissions, or any willful violation of any statute, rule or regulation as determined by final adjudication in the underlying action or in a separate action or proceeding.

### F. Promises/Guarantee

Any actual or alleged warranty, promise, guarantee or representation, either express or implied, or verbal or written, as to the market value or yield of any product, or as to non-guaranteed interest rates or fluctuations in interest rates or future premium payments related to any

product.

**I. Anti-Trust**

Any actual or alleged violation of any antitrust, restraint of trade or other law, rule or regulation which protects competition.

**K. Prior Knowledge, Prior Report of Wrongful Act and Prior and Pending Litigation**

**1. A Wrongful Act** actually or allegedly committed prior to the beginning of the **Coverage Period,** if, on or before the earlier of the effective date of this Coverage Part or the effective date of any Policy issued by the Company to which this Coverage Part is a continuous renewal or replacement, the **Insured** knew or reasonably could have foreseen that the facts or circumstances that could lead to a **Wrongful Act** or a **Claim.**

**P. Specific Products**

Any actual or alleged solicitation, negotiation, placement, recommendation, sale and/or service of any: ...

**4**. Promissory Notes; or\Commodities, futures contracts or option contracts.

Id. at page 7.

17.   Policy No. 150613000 does not apply to any damages sought in the underlying lawsuit because the wrongful acts complained of, and from which the underlying plaintiffs contend their damages flow from, did not occur after the retroactive and prior to the end of the Coverage Period.

18.   Policy No. 150613000 does not apply to any damages sought in the underlying lawsuit because the wrongful acts complained of, and from which the underlying plaintiffs contend their damages flow from, are specifically excluded under the terms of the policy as set out above.

19. Policy No. 150613000 does not apply to any damages awarded against Steve Chastain because he is not an insured under said policy.

20. Application of the foregoing policy definitions and exclusions as stated in the Policy (Exhibit B) provide that no policy benefits are owed under the Underwriters insurance policy for the allegations set forth in the underlying matter. See Exhibit A.

21. For each of the reasons set forth above, Underwriters seeks a determination that there is no coverage for any of the Defendants by reason of the policy language described in this Complaint. It specifically seeks a determination that Separate Defendants Carla Chastain, Steve Chastain and/or Chastain Financial Services, LLC are not entitled to a defense or indemnity for any of the allegations contained in the underlying matter. *See* Exhibit A.

22. Underwriters reserves the right to amend this Complaint and reserves the right to rely on each and every provision, whether or not specifically identified in its Complaint, of the Underwriters' policy attached as Exhibit C.

23. Plaintiff demands the right to a jury trial.

WHEREFORE, Plaintiff, Those Certain Underwriters at Lloyd's, London Severally Subscribing to Policy No. 150613000, prays that this Court enter a judgment declaring that it owes no coverage under Policy No. 150613000 and that it has no duty defend and/or indemnify Carla Chastain, Steve Chastain,

Chastain Financial Services, LLC, or any person for any loss(es) or damage(s) arising from the allegations contained in the underlying lawsuit, which is attached hereto as Exhibit A, for its costs, and for all other relief to which it may be entitled.

Respectfully submitted,

*/s/ Ben C. Hall*

Ben C. Hall, AR BIN 2010159
bhall@barberlawfirm.com
BARBER LAW FIRM PLLC
*Attorneys for Underwriters at Lloyd's London*
425 West Capitol Avenue, Suite 3400
Little Rock, Arkansas 72201-3483
501-372-6175/ 501-375-2802 - facsimile